UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

PAUL SOHI,
      Plaintiff,

Civil Action No. 1:15-cv-563
Beckwith, J.
Litkovitz, M.J.

vs.

DIVERSIFIED ADJUSTMENT
SERVICE, INC.,
      Defendant.

**ORDER AND REPORT
AND RECOMMENDATION**

## I. Introduction

This matter is before the Court on the following motions brought by defendant Diversified Adjustment Service, Inc. (Diversified) and plaintiff Paul Sohi: (1) defendant's motion for partial judgment on the pleadings (Doc. 15), which is unopposed; (2) defendant's motion to compel (Doc. 17), which is unopposed; (3) defendant's motion for summary judgment on all claims (Doc. 18), plaintiff's response in opposition to the motion (Doc. 21), defendant's reply in support of the motion (Doc. 23), defendant's supplemental reply in support of the motion (Doc. 26), and plaintiff's sur-reply memorandum (Doc. 27); (4) plaintiff's motion to strike affidavits submitted by defendant in support of the motion for summary judgment and plaintiff's motion for sanctions (Doc. 22) and defendant's opposing memorandum (Doc. 24); (5) plaintiff's motion for leave to file memorandum in opposition to defendant's motion for summary judgment with supporting affidavit, motion for leave to file motion to strike affidavits of Doug Alcorn and Peter M. Jirik, and motion for sanctions against defendant's counsel (Doc. 28) and defendant's response in opposition (Doc. 29); plaintiff's motion to dismiss the complaint without prejudice (Doc. 30), defendant's response in opposition (Doc. 31), and plaintiff's reply

in support of the motion (Doc. 34); and (6) defendant's motion for attorney fees (Doc. 31) and plaintiff's opposing memorandum (Doc. 34).

Plaintiff originally filed the pro se complaint in this action in the Hamilton County, Ohio Court of Common Pleas on July 30, 2015. (Doc. 4). The complaint presents claims for violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692 *et seq.*, and the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681 *et seq*. Defendant Diversified removed the action to this Court under the Court's federal question jurisdiction, 28 U.S.C. § 1331. (Doc. 1). The complaint alleges that defendant willfully and maliciously "inputted a debt to plaintiff" that was not plaintiff's debt; defendant failed to "timely correct" the error after being notified of it and "published said obligation with various credit reporting agencies"; defendant "falsely reported to credit agencies about an account that is in dispute"; and defendant's actions have damaged plaintiff's credit rating, caused him financial hardship by placing his personal financial transactions in jeopardy, and caused him embarrassment in the community. (Doc. 4). Plaintiff claims that defendant's acts of publishing this allegedly false information and failing to correct it violate the FDCPA. (Count II). Plaintiff further alleges that defendant's acts of reporting a paid account as a "Collection Account" debt of an individual violates the FCRA. (Count III).[1]

## II. Plaintiff's requests for oral argument

Plaintiff requests oral argument on several of the pending motions. The legal and factual issues involved in this case are not complex and they have been fully briefed. Pursuant to Rule 7.1 of the Local Rules of the United States District Court for the Southern District of Ohio, the Court therefore finds that oral argument is not "essential to the fair resolution" of this case and plaintiff's request for same is denied. S.D. Ohio Civ. R. 7.1(b)(2).

---

[1] There is no Count I in the complaint.

2

### III. Plaintiff's motion to dismiss the complaint without prejudice (Doc. 30)

On March 23, 2016, plaintiff filed a motion to dismiss the complaint without prejudice. (Doc. 30). Defendant opposes dismissal of the lawsuit without prejudice. (Doc. 31). Defendant notes that it filed a motion for judgment on the pleadings in November 2015 and a motion for summary judgment in January 2016 seeking to dismiss plaintiff's claims on the merits, and both motions remain pending. (Docs. 15, 18). Defendant contends that plaintiff's claims lack merit and should be dismissed with prejudice. In addition to dismissal of the lawsuit with prejudice, defendant seeks an award of attorney fees and costs under the FDCPA, 15 U.S.C. § 1692k(a)(3), on the grounds plaintiff has continued this action against defendant in bad faith and for purposes of harassment.

In support of his motion to dismiss the complaint without prejudice, plaintiff alleges he has meritorious claims under the FDCPA and FCRA. (Doc. 34). Plaintiff denies he has pursued this litigation in bad faith or for the purpose of harassing defendant. He alleges that defendant has taken action to delay this case, and he claims defendant's counsel acted in bad faith by facilitating perjury by affiant Jirik.

Rule 41 governs the voluntary and involuntary dismissal of civil actions. Fed. R. Civ. P. 41. Rule 41(a)(2) provides that if the plaintiff's motion for voluntary dismissal is filed after the defendant serves either an answer or a motion for summary judgment, or without the defendant's consent, then the action may be dismissed "only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). "[T]he purpose of Rule 41(a)(2) is to protect the nonmovant . . . from unfair treatment." *Jones v. W. Reserve Transit Auth.*, 455 F. App'x 640, 643 (6th Cir. 2012) (quoting *Bridgeport Music, Inc. v. Universal-MCA Music Pub., Inc.*, 583 F.3d 948, 953

3

(6th Cir. 2009)).  The Court must consider whether the non-movant "would suffer plain legal prejudice" as the result of a dismissal without prejudice.  *Id.* (quoting *Bridgeport Music, Inc.*, 583 F.3d at 953) (citations and internal quotation marks omitted).  The factors to be considered in making this determination are "the defendant's effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, insufficient explanation for the need to take a dismissal, and whether a motion for summary judgment has been filed by the defendant."  *Id.* (quoting *Grover by Grover v. Eli Lilly and Co.*, 33 F.3d 716, 718 (6th Cir. 1994) (citations omitted)).  The mere possibility that the nonmovant would face a second lawsuit is an insufficient basis for finding "plain legal prejudice" resulting from the dismissal.  *Id.*

Plaintiff's motion for voluntary dismissal without prejudice should be denied.  This case has been pending for approximately eight months.  During that time, defendant has expended considerable time and effort in defending this lawsuit.  Defendant filed an answer in September 2015 (Doc. 6), a motion for judgment on the pleadings in November 2015 (Doc. 15), and a motion for summary judgment in January 2016 (Doc. 18).  Defendant has engaged in discovery and filed a motion to compel in December 2015.  (Doc. 17).  Plaintiff has not been diligent in prosecuting the action.  Plaintiff did not respond to either the motion for judgment on the pleadings or the motion to compel.  Moreover, plaintiff did not provide an explanation in his cursory motion to dismiss for why dismissal of the lawsuit without prejudice is warranted at this juncture.  Plaintiff only vaguely alludes to a lack of "[p]ublic confidence in the legal profession" and "unchecked rampant misconduct[] of certain lawyers currently practicing in the legal profession."  (Doc. 30 at 1).  Plaintiff makes no specific allegations related to this lawsuit.

4

The balance of factors weighs overwhelmingly in favor of a finding that plaintiff is not entitled to have this action dismissed without prejudice. Dismissal of the lawsuit without prejudice at this stage would result in "plain legal prejudice" to defendant. *Jones*, 455 F. App'x at 643. Plaintiff's motion to dismiss the case without prejudice (Doc. 30) should be denied. Instead, defendant's motions for partial judgment on the pleadings and for summary judgment should be granted, and plaintiff's claims should be dismissed with prejudice on the merits.[2]

## IV. Defendant's motion for partial judgment on the pleadings (Doc. 15)

Defendant moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) on Count III of the complaint, which presents a claim under the FCRA. Defendant contends that plaintiff has failed to state a claim for relief under the relevant provisions of the FCRA.

A Rule 12(c) motion for judgment on the pleadings is governed by the same standard applicable to a motion to dismiss the complaint under Fed. R. Civ. P. 12(b)(6). *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir.), *cert. denied*, 135 S. Ct. 758 (2014). The reviewing court must construe the complaint in the light most favorable to the nonmoving party and accept all well-pled factual allegations as true. *Id*. The complaint must contain "either direct or inferential allegations respecting all material elements necessary for recovery under a viable legal theory" to survive the motion. *Id*. (quoting *Philadelphia Indem. Ins. Co. v. Youth Alive, Inc.*, 732 F.3d 645, 649 (6th Cir. 2013) (citation and internal quotation marks omitted)). The Court "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Id*. (quoting *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 275-76 (6th Cir. 2010) (citation and quotation marks omitted)). "[A]

---

[2] Defendant's request for attorney fees and costs raised in response to plaintiff's motion to dismiss is addressed below.

plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 246-47 (6th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Rather, '[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* at 247 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Plaintiff alleges in the complaint that defendant violated the FCRA by "reporting a paid account as 'Collection Account' account debt of an individual" and by refusing to correct the error when it was brought to defendant's attention. (Doc. 4 at 2). Defendant argues that plaintiff does not have a private right of action against it under 15 U.S.C. § 1681s-2(a) as a furnisher of information to a credit reporting agency. (Doc. 15 at 3). Defendant further argues that it cannot be held liable for failing to correct an alleged error in information it reported because there is no allegation that defendant received notice from a consumer reporting agency that the information was disputed as required under 15 U.S.C. § 1681s-2(b). (*Id.* at 4).

Plaintiff's claim that Diversified reported false and inaccurate information regarding an account to various credit reporting agencies alleges a violation of 15 U.S.C. § 1681s-2(a). *See Ogle v. BAC Home Loans Servicing LP*, 924 F. Supp.2d 902, 911-12 (S.D. Ohio 2013). Section 1681s-2(a) imposes a duty on "furnishers of information" such as Diversified to provide credit reporting agencies with accurate information about consumers. *See Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 614-16 (6th Cir. 2012). However, there is no private cause of action for a violation of § 1681s-2(a). *Ogle*, 924 F. Supp.2d at 911; *see also Girgis v. Countrywide Home*

6

*Loans, Inc.*, 733 F. Supp.2d 835, 849 (N.D. Ohio 2010) (noting that only government agencies or officials may enforce § 1681s-2(a)). Thus, insofar as plaintiff brings a claim against defendant for violation of § 1681s-2(a), the complaint fails to state a claim for relief.

Plaintiff's claim that Diversified failed to timely correct erroneous information alleges a violation of 15 U.S.C. § 1681s-2(b). Section 1681s-2(b) allows a consumer to recover damages for a willful violation of that provision. *Ogle*, 924 F. Supp.2d at 912 (citing *Bach v. First Union Nat'l Bank*, 149 F. App'x 354, 358-59 (6th Cir. 2005)). Section 1681s-2(b) imposes a duty on a furnisher who receives notice of a dispute regarding the "completeness or accuracy" of a consumer's information from a consumer reporting agency to conduct an investigation regarding the disputed information; review all relevant information provided by the consumer reporting agency pursuant to § 1681i(a)(2); report the results of the investigation to the consumer reporting agency; report findings of incomplete or inaccurate information to other consumer reporting agencies; and take steps to modify, delete or block the incorrect information. 15 U.S.C. § 1681s-2(b)(1). To bring a claim against a furnisher of information under § 1681s-2(b), the plaintiff must "show that the furnisher received notice from a consumer reporting agency, not the plaintiff, that the credit information is disputed." *Id.* (quoting *Downs v. Clayton Homes, Inc.,* 88 F. App'x 851, 853-54 (6th Cir. 2004)). "[A]n information furnisher's duties under § 1681s-2(b) only arise after it receives notice of a dispute from a credit reporting agency." *Id.* (citing *Farris v. Morgan Stanley Dean Witter Credit Corp.,* No. 08-11851, 2010 WL 3023808 (E.D. Mich. July 29, 2010)).

Here, plaintiff does not allege that Diversified received notice from a consumer reporting agency that the information it furnished was disputed. Because a furnisher's duties under §

7

1681s-2(b) do not arise until after it receives notice of a dispute from a consumer reporting agency, plaintiff's failure to allege that a consumer reporting agency notified Diversified of the disputed information is fatal to its claim under this provision.

Plaintiff has failed to state a claim for relief against Diversified under either 15 U.S.C. § 1681s-2(a)(1) or (b). Diversified's motion for judgment on the pleadings on plaintiff's FCRA claim (Doc. 15) should be granted.

**V. Defendant's motion for summary judgment (Doc. 18), plaintiff's motion to strike affidavits and motion for sanctions (Doc. 22), and plaintiff's motion for leave to file opposing memorandum and supporting affidavit, motion to strike, and motion for sanctions (Doc. 28)**

Defendant Diversified moves for summary judgment on plaintiff's claims brought under the FDCPA and the FCRA. (Doc. 18). In support of its motion, defendant has submitted affidavits from Doug Alcorn, Operations Manager for Cincinnati Bell, Inc. (Cincinnati Bell) (Doc. 18, Exh. A), and Peter M. Jirik, Diversified Adjustment Service, Inc. General Counsel and Director of Compliance (Doc. 18, Exh. B). The affiants both swear that they have personal knowledge of the facts set forth in their affidavits and that the records attached to their affidavits are records kept in the course of their employer's regularly conducted business activity. (*Id.*, Exhs. A, B, ¶¶ 1, 2, 3).

In response to defendant's motion, plaintiff has submitted a memorandum and the supporting affidavit of his personal assistant, Melissa Rodgers. (Doc. 21; *Id.*, Exh. 1). Plaintiff also moves to strike Alcorn and Jirik's affidavits and for sanctions against defendant's attorneys for allegedly drafting and filing false and misleading affidavits. (Doc. 22).

8

### A. Plaintiff's motion to strike affidavits and for sanctions (Doc. 22)

Plaintiff's arguments in support of his motion to strike affidavits are difficult to follow. As best the Court is able to discern, plaintiff alleges that Alcorn's affidavit must be stricken because the affidavit includes statements of which Alcorn could not have personal knowledge. Specifically, plaintiff alleges that Alcorn does not have personal knowledge as to whether the account of a committee (Friends of Dr. Paul Sohi) was erroneously attributed to an individual related to the committee (plaintiff) and whether service of invoices or bills was perfected on plaintiff.[3]  (Doc. 22 at 2).  Plaintiff further alleges that the affidavit is misleading because it does not include a statement that plaintiff made payments that would have brought the Cincinnati Bell account balance to $0.  (*Id*. at 2, 6-7).  Plaintiff alleges that Jirik's affidavit must be stricken because Jirik alleges that Diversified did not receive any correspondence from plaintiff in response to the initial letter Diversified sent to plaintiff on April 18, 2015, whereas the account records attached to his affidavit show that Diversified received a letter from plaintiff on July 10, 2015.  (*Id*. at 2-3, citing Doc. 18, Exh. B, Exh. 1, p. 8).  Defendant argues in response that as Cincinnati Bell Operations Manager, Alcorn can provide information about records kept in the course of Cincinnati Bell's regularly conducted business activity.  (Doc. 24).  Defendant further argues that plaintiff has not offered any evidence to show that Alcorn or Jirik made false statements in their affidavits.

Plaintiff has not demonstrated a valid reason for striking the affidavit of Alcorn or Jirik. Plaintiff has not shown that either affidavit fails to satisfy the requirements for affidavits offered

---

[3] Plaintiff states: "[T]he affidavit misleads the court that, the account identified in exhibit 1 to his affidavit; was for 'Friends of Dr. Paul Sohi' a committee.  The account of a committee was impounded upon an individual related to the committee, a gross error to which Dough (sic) Alcorn, an employee of Cincinnati Bell, cannot possess personal knowledge because he did not set up the original account."  (Doc. 22 at 2).

in support of a motion for summary judgment under Fed. R. Civ. P. 56(c)(4). The affidavits were made on personal knowledge; they set out facts that would be admissible in evidence; and they show that the affiants were competent to testify on the matters set forth therein and in the records attached to the affidavits. *See Stevens v. Thetford Twp.*, 475 F. App'x 556, 562 (6th Cir. 2012). The affidavits are not defective under Rule 56(c)(4) simply because plaintiff disagrees with factual statements made by the affiant. The Court will therefore deny plaintiff's motion to strike the affidavits.

Plaintiff moves for sanctions against plaintiff's counsel for allegedly drafting an affidavit for Jirik's signature that includes false statements. (Doc. 22 at 8-9). Plaintiff alleges Jirik misrepresented that the Cincinnati Bell account in question was plaintiff's individual account. However, plaintiff has not offered proof that shows Jirik knew this to be the case. Insofar as plaintiff takes issue with Jirik's statement in his affidavit that Diversified did not receive correspondence in response to its April 18, 2015 letter to plaintiff, the account documentation submitted by Diversified shows that plaintiff did not respond to that letter within 30 days as he was notified to do if he disputed the validity of the debt. (Doc. 18, Exh. B, Exh. 1). Thus, Jirik's affidavit does not include any false statements in this regard. Plaintiff did subsequently correspond with Diversified after his account was reported to the credit reporting agencies, as noted in both Jirik's affidavit and the attached account records; however, there is no indication that plaintiff's correspondence was in response to the April 18, 2015 letter. (Doc. 18, Exh. B, ¶ 8; *Id.*, Exh. 1). Because there is no indication in the record that defendant's counsel drafted a false or misleading affidavit for Jirik 's signature, the Court will deny plaintiff's motion for sanctions. (Doc. 22).

10

**B. Plaintiff's motion for leave to file (Doc. 28).**

After defendant filed its reply in support of the motion for summary judgment, plaintiff filed a motion for leave to file a memorandum in opposition to defendant's motion for summary judgment with a supporting affidavit, motion for leave to file a motion to strike affidavits of Alcorn and Jirik, and motion for sanctions against defendant's counsel. (Doc. 28). As noted by defendant in its response (Doc. 29), the filing appears to be a duplicate of plaintiff's prior memorandum in response to the motion for summary judgment and of plaintiff's motion to strike and for sanctions (Docs. 21, 22). Accordingly, the motion for leave to file (Doc. 28) is denied as moot.

**C. Defendant's motion for summary judgment (Doc. 18)**

Defendant moves for summary judgment on plaintiff's claims under the FDCPA and the FCRA. (Doc. 18). It is not necessary to address whether summary judgment is appropriate on plaintiff's FCRA claim in light of the undersigned's recommendation that the claim be dismissed pursuant to Fed. R. Civ. P. 12(c). Summary judgment should be granted in favor of defendant on plaintiff's sole remaining claim that defendant violated the FDCPA by publishing false information to credit reporting agencies about a debt that defendant erroneously attributed to plaintiff and by failing to timely correct the error after being notified of it. (Doc. 4 at 1).

Fed. R. Civ. P. 56 allows summary judgment to secure a just and efficient determination of an action. The court may only grant summary judgment as a matter of law when the moving party has identified, as its basis for the motion, an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is appropriate when a party "fails to make a showing sufficient to establish the existence of an element essential to that

11

party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322-23. In reviewing a motion for summary judgment, "the non-moving party's evidence is to be believed, and all justifiable inferences are to be drawn in [that party's] favor." *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (internal quotation marks omitted).

The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)). The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970)). However, a district court need not view the facts in the light most favorable to the nonmoving party if that party's version of events is "blatantly contradicted by the record, so that no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The court is not to weigh the evidence and determine the truth of the matter but is to decide whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Id.* (citing *Cities Serv.*, 391 U.S. at 288-289). If the evidence is merely colorable, *Dombrowski v. Eastland*, 387 U.S. 82, 84 (1967), or is not significantly probative, *Cities Serv.*, 391 U.S. at 290, judgment may be granted. *Anderson*, 477 U.S. at 249.

The FDCPA regulates interactions between consumer debtors and "debt collector[s]," defined to include any person who "regularly collects . . . debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). *Jerman v. Carlisle, McNellie, Rini, Kramer &*

12

*Ulrich LPA*, 559 U.S. 573, 577 (2010). The FDCPA prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. In order to establish a claim under § 1692e, the following elements must be satisfied: (1) the plaintiff must be a "consumer" as defined by the Act; (2) the "debt" must arise out of transactions which are "primarily for personal, family or household purposes"; (3) defendant must be a "debt collector" as defined by the Act; and (4) defendant must have violated § 1692e's prohibitions. *Whittiker v. Deutsche Bank Nat'l Trust Co.*, 605 F. Supp.2d 914, 926 (N.D. Ohio 2009). The conduct prohibited under § 1692e includes falsely representing "the character, amount, or legal status of any debt" (§ 1692e(2)(A)); "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed" (§ 1692e(8)); and using any "false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer" (§ 1692e(10)). A debt collector is not required to undertake an "independent investigation" into whether the amount of the debt is accurate in order to avoid liability under 15 U.S.C. § 1692e(2)(A). *Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1032 (6th Cir. 1992).

Defendant moves for summary judgment on plaintiff's claim under the FDCPA on the ground it did not publish any false information. (Doc. 18 at 4). Defendant further alleges it properly relied on Cincinnati Bell's representation that the account balance was a valid debt that plaintiff owed and it had no duty to independently investigate and verify the debt. (*Id*. at 4-5). Plaintiff opposes defendant's motion for summary judgment. (Doc. 21). Plaintiff alleges that Cincinnati Bell erroneously attributed an election campaign account which he opened on behalf

13

of the committee "Friends of Dr. Paul Sohi" to him individually and it failed to credit the amounts paid by the committee. (*Id.* at 5). Plaintiff alleges that Diversified "was alerted regarding the error" but negligently reported the error to three credit reporting agencies. (*Id.*). In reply, defendant alleges that plaintiff has not met his burden to provide evidence in support of his claim. (Doc. 23). Defendant further alleges that plaintiff cannot bring a claim under the FDCPA because the account must have been created primarily for personal, family or household purposes, whereas plaintiff concedes this account was an election campaign account. *See* 15 U.S.C. § 1692(a)(5).[4]

Defendant and plaintiff also submitted supplemental memoranda with leave of Court in connection with the motion for summary judgment. (Docs. 26, 27). Defendant alleges in its memorandum that untimely discovery responses plaintiff provided after expiration of the discovery deadline demonstrate that the FDCPA is inapplicable here. Defendant states that plaintiff indicated in Interrogatory Response No. 9 that the account in question belonged to the political committee "Friends of Dr. Sohi," which precludes plaintiff from pursuing a claim under the FDCPA.[5] (Doc. 26 at 1-2). Plaintiff's response to the supplemental memorandum does not address the issue of the applicability of the FDCPA. (Doc. 27). Instead, plaintiff alleges that defendant's counsel perpetrated a fraud on the Court by willfully introducing a false affidavit into the record, and he alleges he timely filed his response to the motion for summary judgment. (*Id.*).

---

[4] Defendant also asserts that plaintiff did not file his opposing memorandum within the time allotted under the Federal Rules. (Doc. 23 at 1). However, defendant does not seek any relief on this ground.

[5] Defendant also alleges that plaintiff has not filed any opposition to defendant's motion for summary judgment (Doc. 26 at 1), which is not accurate. (*See* Doc. 21). However, defendant does not seek any relief on this ground.

In support of its motion for summary judgment, defendant has submitted the affidavits of Alcorn and Jirik. (Doc. 18, Exhs. A, B).  In support of his response, plaintiff has submitted the affidavit of Melissa Rodgers, his personal assistant. (Doc. 21, Exh. 1).  The affidavits establish the following relevant facts, which are undisputed except where noted:

On unspecified dates, Rodgers called Cincinnati Bell and informed the company that an internet and phone account that should have been placed in the name of the campaign committee "Friends of Dr. Paul Sohi" had erroneously been put in the name of the individual Paul Sohi. (*Id.*, ¶ 2).  She requested that the account be corrected; however, Cincinnati Bell failed to make the correction.  (*Id.*, ¶¶ 2, 3).  Rodgers requested termination of the service on May 7, 2014, but Cincinnati Bell continued to bill for the service after May 6, 2014.  (*Id.*, ¶ 4).  Rodgers states that "Cincinnati Bell has been paid on their bills."[6]  (*Id.*, ¶ 5).

Cincinnati Bell's February 19, 2015 itemized statement pertaining to plaintiff's account reflected an account balance of $229.07 that was owed by plaintiff.  (Alcorn Aff., ¶ 4).  On April 15, 2015, Cincinnati Bell electronically referred plaintiff's account for that amount to Diversified for collection.  (*Id.*, ¶ 5; Jirik Aff., ¶ 4).  On April 18, 2015, Diversified sent plaintiff its initial correspondence informing him that the account had been placed with Diversified for collection. (Jirik Aff., Exh. 2).  The letter advised plaintiff that Diversified would assume the debt was valid unless plaintiff informed Diversified in writing within 30 days after receipt of the notice that he disputed the debt in whole or in part.  (*Id.*).  The letter further informed plaintiff of the steps Diversified would take if he timely notified Diversified in writing of the dispute.  (*Id.*). According to Diversified's account records, the April 18, 2015 letter was not returned in the

---

[6] Rodgers does not provide any details regarding the bill payments.

15

mail. (Jirik Aff., ¶ 6). Diversified did not receive any correspondence from plaintiff in response to the letter. (*Id.*). According to Rodgers, she never received any written communication from Diversified and she has personal knowledge that plaintiff never received any written communication from Diversified. (Doc. 21, Exh. 1, ¶ 7).

On June 24, 2015, Diversified furnished plaintiff's account to three credit bureaus. (Jirik Aff., ¶ 8; Exh. 1). According to defendant's records, plaintiff contacted Diversified in early July and claimed that he was never informed of the Cincinnati Bell bill and he had not received defendant's notices, even though the correct address was listed for him. (Jirik Aff., Exh. 1). Plaintiff demanded that "the report" be deleted. (*Id.*). On July 10, 2015, Diversified received a letter from plaintiff via certified mail informing Diversified it had until July 15, 2015, to correct the error and provide proof the correction had been made with all three credit bureaus or else plaintiff would file a complaint in the state court. (*Id.*). On July 22, 2015, Diversified requested that the account be deleted from plaintiff's credit report. (*Id.*, ¶ 9; Exh. 1). Diversified was never notified by a credit reporting agency that plaintiff disputed the account. (Jirik Aff., ¶ 10).

The material undisputed facts demonstrate that defendant is entitled to summary judgment on plaintiff's claim under the FDCPA, 15 U.S.C. § 1692e. Plaintiff alleges in his opposing memorandum, and has introduced evidence, that the Cincinnati Bell account was a campaign account belonging to the committee "Friends of Dr. Paul Sohi."[7] (Doc. 21, Exh. 1, Rodgers Aff., ¶ 2) (stating that she personally called Cincinnati Bell and informed it that the

---

[7] Plaintiff attempts to contradict this allegation in his reply memorandum in support of the motion to dismiss the complaint without prejudice. (Doc. 34 at 2). Plaintiff states: "The telephone did not belong to anyone else other than Paul Sohi. The answer 'Friends of Paul Sohi' [an apparent reference to an interrogatory response] was not an admission but an answer to explain the users of the phone number. For example the telephone was used by Paul Sohi, his family, his friends and committees of Paul Sohi. The answer was pertaining to the users of the telephone." (*Id.*). Plaintiff's unsworn statement, which contradicts his earlier representation, is not evidence that refutes Rodgers' affidavit statement.

16

internet/telephone account had erroneously been put in the name of "Paul Sohi," she advised

Cincinnati Bell that the correct entity was "a campaign committee called 'Friends of Dr. Paul

Sohi,'" and she requested that the error be corrected).  Defendant does not dispute plaintiff's

representation and Rodger's supporting affidavit statement showing that the account was utilized

primarily for purposes other than personal reasons.  Plaintiff's allegation and supporting proof

that the disputed account belonged to an election campaign committee preclude plaintiff from

establishing an essential element of his FDCPA claim.  *Cf. Evenson v. Palisades Collection,*

*LLC,* No. 2:13-cv-1226, 2015 WL 3466936, at *3 (S.D. Ohio June 1, 2015) ("This court has held

that the lack of allegations in a complaint that the debt in question arose out of a transaction

which was primarily for personal, family or household purposes was fatal to the plaintiffs'

FDCPA claim.") (citing *Estep v. Manley Deas Kochalski, LLC,* 942 F. Supp.2d 758, 766-67

(S.D. Ohio 2013), *aff'd,* 552 F. App'x 502 (6th Cir. 2014); *Whittiker,* 605 F. Supp.2d at 928).

Defendant is entitled to summary judgment as a matter of law on plaintiff's FDCPA claim on

this ground.

　　　Even assuming the disputed account was for a personal or other qualifying use, defendant

is entitled to summary judgment because plaintiff has not produced any evidence that raises a

genuine issue as to whether defendant used a "false, deceptive, or misleading"

representation or method in connection with collection of the $229.07 debt owed to Cincinnati

Bell.  15 U.S.C. § 1692e.  Plaintiff has not submitted evidence that shows defendant falsely

represented "the character, amount, or legal status" of the debt reported to it by Cincinnati Bell

(§ 1692e(2)(A)); that defendant knew or should have known the credit information it thereafter

communicated to the credit bureaus was false or that the debt was disputed at the time defendant

17

communicated it (§ 1692e(8)); or that defendant used a false representation or deceptive means to collect or attempt to collect the $229.07 debt (§ 1692e(10)). There is no evidence that defendant was aware of any communications plaintiff had with Cincinnati Bell regarding the validity of the debt or that Cincinnati Bell informed Diversified the account was in dispute for any reason. In fact, there is no evidence that Cincinnati Bell knew there was a dispute regarding the debt before referring it to Diversified for collection. Although plaintiff's assistant Rodgers states she contacted Cincinnati Bell about the name on the account and payment of the account, she does not allege when these communications occurred. (Doc. 21, Exh. 1, ¶¶ 2, 3). Similarly, although Rodgers states that "Cincinnati Bell has been paid on their bills," she does not allege when payment was made. (*Id.*, ¶ 5). Further, Rodgers does not allege that Diversified was aware at any time of communications she had with Cincinnati Bell concerning the validity of the debt. Nor was defendant under an obligation to conduct an independent investigation of the debt referred for collection to determine if it was valid. *Smith*, 953 F.2d at 1032.

In addition, plaintiff has not produced evidence to show that Diversified was aware plaintiff disputed the validity of the debt after Cincinnati Bell referred the account to it and before Diversified reported the account to the credit reporting agencies. Rodgers asserts that she personally mailed to an unnamed recipient a letter from plaintiff objecting to the validity of the account, at an unspecified address, on an unspecified date. (Doc. 21, Exh. 1, ¶ 9). This is an apparent reference to a certified letter Diversified received from plaintiff on July 10, 2015, informing Diversified that plaintiff would file a complaint in state court if Diversified did not correct the error in the account and provide proof that the disputed debt had been corrected with the three credit reporting agencies by July 15, 2015. (Doc. 18, Exh. B, Exh. 1, p. 8).

18

Defendant's records reflect that it received this letter after the debt had been reported to the credit reporting agencies as of June 24, 2015.  (*Id.* at 5).

Finally, defendant's records reflect that it acted promptly after being notified that plaintiff disputed the validity of the debt.  According to defendant's records, plaintiff first contacted defendant by telephone on July 2, 2015, and sent a letter by certified mail which defendant received on July 10, 2015.  (*Id.* at 5-6, 8).  Defendant took action to delete the account from plaintiff's credit reports, and the cancellation apparently occurred, no later than July 22, 2015. (*Id.* at 8).

Thus, plaintiff has not come forward with evidence that shows defendant violated § 1692e.  By plaintiff's own admission and supporting proof, he did not bring the FDCPA claim in connection with an account that he established primarily for personal, household or family purposes.  Further, plaintiff has not produced evidence to show that defendant published information to credit reporting agencies about a debt that was in dispute which it knew or should have known was false.  The evidence shows that plaintiff did not notify defendant that the debt was in dispute until after defendant had reported the debt to the credit bureaus.  Once notified that the debt was in dispute, defendant acted promptly to correct the error plaintiff reported. Although plaintiff has submitted Rodgers' affidavit and other documentation in opposition to the motion for summary judgment, the evidence plaintiff has produced does not create a genuine issue of material fact on the essential elements of his FDCPA claim.  Defendant is entitled to summary judgment on defendant's claim under the FDCPA.

19

## VI. Defendant's motion for sanctions (Doc. 33)

In response to plaintiff's motion to dismiss this matter without prejudice, defendant moves for the imposition of sanctions against plaintiff pursuant to 15 U.S.C. § 1692k(a)(3).[8] (Doc. 31 at 3). Section 1692k "contemplates a post-trial proceeding following an assessment of the merits of a plaintiff's complaint" to determine whether an award of fees is warranted and the amount of fees. *Kropf v. TCA, Inc.*, 752 F. Supp.2d 797, 801 (E.D. Mich. 2010).

### A. Entitlement to fee award

Section 1692k(a)(3) provides that the Court may award the defendant "attorney's fees reasonable in relation to the work expended and costs" if the Court finds that an action under that section "was brought in bad faith and for the purpose of harassment." 15 U.S.C. § 1692k(a)(3); *Deere v. Javitch, Block & Rathbone LLP*, 413 F. Supp.2d 886, 888-89 (S.D. Ohio 2006) (§ 1692k(a)(3) permits the Court to award the defendant attorney fees upon a finding that the two-pronged standard is satisfied). Courts have declined to award attorney fees "when a claim is 'minimally colorable' and without additional facts supporting bad faith or harassment." *Brown v. Van Ru Credit Corp.*, No. 14-12136, 2015 WL 225727, at *5 (E.D. Mich. Jan. 16, 2015), *aff'd*, 804 F.3d 740 (6th Cir. 2015) (citing *Horkey v. J.V.D.B. & Assocs.*, 333 F.3d 769, 775 (7th Cir. 2003); *Guerrero v. RJM Acquisitions, LLC*, 499 F.3d 926, 940 (9th Cir. 2007)). Conversely, an

---

[8] Section 1692k(a)(3) states:

> Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of -- . . . (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court. On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs.

15 U.S.C.A. § 1692k(a)(3).

award of fees had been held to be appropriate where "simple legal research should have warned plaintiff of his non-viable claims, and that continuing to bring these claims would cause needless expenditures for defendant," such that plaintiff's failure to dismiss untenable claims established plaintiff's bad faith and intent to harass. *Adams v. Bureau of Collection Recovery, LLC*, No. 10-cv-12818, 2011 WL 3204759, at *2 (E.D. Mich. July 28, 2011). In *Adams*, the Court found the defendant had shown that the plaintiff's failure to dismiss "untenable claims" established the plaintiff's bad faith and intent to harass where the plaintiff should have known he could not rely merely on the allegations of the complaint to survive summary judgment, and he had made conflicting allegations and affidavit statements. *Id*., at *2. The imposition of fees has likewise been found to be warranted under § 1692k(a)(3) where the plaintiff failed to dismiss any claims after it became clear during discovery that they lacked any factual basis, thereby forcing the defendant to file a summary judgment motion, and the plaintiff's own deposition testimony contradicted most of the allegations made in the complaint. *Rhinehart v. CBE Group, Inc.,* 714 F. Supp.2d 1183, 1185-86 (M.D. Fla. 2010).

Defendant alleges that plaintiff continued to pursue this case in bad faith and for the purpose of harassment in an effort "to extort a settlement" from defendant. (Doc. 31 at 3). Defendant has submitted documents showing that it sent correspondence, documentation and case citations to plaintiff three times in September and October 2015 explaining why his claims were without merit and informing him that defendant would seek to recover its attorney fees if plaintiff did not dismiss the case with prejudice. (Doc. 31 at 4-5; Affidavit of John P. Landenderfer, Esq., Doc. 31-1). Defendant alleges that plaintiff refused to cooperate in discovery and did not respond to a motion to compel it was forced to file. (*Id*. at 5). Defendant

further asserts that plaintiff did not admit until the case had been pending for several months that the account belonged to a committee, and not to him personally, thereby establishing that the FDCPA is not applicable. (*Id*. at 5-6). Defendant has submitted an affidavit and billing records to support its claim for $13,181.50 in attorney fees and costs incurred in the defense of this lawsuit. (Doc. 31-1).

In response to defendant's request for fees and costs, plaintiff states that he filed this action in good faith to obtain corrections to the account in issue after he had exhausted all other options. (Doc. 34-1, Declaration of Dr. Paul Sohi, ¶¶ 4, 5). Plaintiff alleges he has a valid claim under the FDCPA because the account was set up as his individual account, he individually paid the bills on the account, and "Paul Sohi" was incorrectly reported to the three credit reporting agencies as a collection account with a tag to his social security number. (Doc. 34 at 2). Plaintiff alleges that even though his personal assistant Rodgers stated in her affidavit that she notified Cincinnati Bell the account had incorrectly been put in plaintiff's name and the correct account holder was the campaign committee "Friends of Dr. Paul Sohi," the telephone associated with the account in fact belonged exclusively to plaintiff and was also used by "his family, his friends and committees of Paul Sohi." (*Id*.). Plaintiff alleges that defendant has engaged in excessive motion practice in an attempt to obtain an award of attorney fees from him. (*Id*. at 1-2). Plaintiff reiterates his allegations of perjury by affiant Jirik, which plaintiff alleges is evidence of bad faith on defendant's part. (*Id*. at 3-4). Plaintiff also alleges that defendant unreasonably failed to agree to a dismissal without prejudice and delayed the litigation without justification by failing to cooperate with plaintiff in scheduling a deposition. (*Id*. at 4-5).

22

Defendant has carried its burden to show plaintiff brought his complaint and continued to pursue this litigation in bad faith and with intent to harass.  Although plaintiff alleges that he brought this action in good faith to obtain corrections to the Cincinnati Bell account, defendant's records appear to contradict plaintiff's allegation.  Plaintiff alleges that "defendants retracted the publication from the credit reporting bureaus during the pendency of this case. . . ." (Doc. 34 at 3).  Not only has plaintiff failed to offer proof in support of his allegation, but Diversified's records indicate it requested the account be deleted from plaintiff's credit reports, and the cancellation was effective, no later than July 22, 2015.  (Doc. 18, Exh. B, ¶ 9; *Id*., Exh. 1, p. 8).  Plaintiff did not file this lawsuit until July 30, 2015 (Doc. 4).  As of that date, according to Diversified's records, the account balance on the credit reports had been reduced to $0.  (Doc. 18, Exh. B, Exh. 1, p. 8).  Despite the fact that plaintiff had apparently obtained the corrections to the account as requested, he proceeded to file this lawsuit against defendant.  Plaintiff's decision to file a lawsuit for the ostensible purpose of obtaining the very relief he appears to have already secured from Diversified is indicative of bad faith.

Even assuming no correction to the account had been made, or that plaintiff was not aware of it, as of the date he filed his complaint, there is evidence plaintiff continued to pursue the lawsuit in bad faith and for the purpose of harassing defendant once he knew the account had been corrected and reasonably knew or should have known his claims were baseless.  This evidence includes email correspondence between defendant's counsel and plaintiff.  In an email defendant's counsel sent to plaintiff approximately two months after plaintiff had filed the lawsuit, counsel advised plaintiff why his claims were not legally supported, provided case citations in support of defendant's position, and attached invoices from Cincinnati Bell to show

23

the account in question belonged to plaintiff. (Doc. 31-1, Langenderfer Aff., Exh. 1, 9/29/15 email). Counsel informed plaintiff that although his claims were without merit, Diversified had nonetheless "already deleted the account from your credit report." (*Id.*). Counsel also wrote:

> Please dismiss this matter with prejudice. Our client will be forced to incur substantial attorneys' fees and costs to defend this matter. If you do not dismiss this matter, upon prevailing on the merits, we will ask the court to award attorneys' fees under § 1692k(a)(3). Thanks.

(*Id.*).

Approximately one week after sending the initial email, defendant's counsel sent plaintiff an email again advising him that his claims had no merit, citing several cases that supported defendant's position, and attaching the initial letter Diversified had sent plaintiff on April 18, 2015. (*Id.*, 10/7/15 email). Counsel wrote:

> Dr. Sohi, attached is a copy of the first notice that Diversified sent to you on April 18, 2015. You cannot prevail on your claims. See e.g. [case citations]. You need to dismiss [the] matter with prejudice. Our client will be forced to incur substantial attorneys' fees and costs to defend this matter. Upon prevailing on the merits, we will ask the court to award attorneys' fees under § 1692k(a)(3). Thanks.

(*Id.*). Plaintiff does not appear to have given serious consideration to whether his claims had merit in light of the authorities cited by defendant. He responded to counsel's email less than 40 minutes later by simply stating, "Good luck." (*Id.*).

Three weeks later, counsel sent defendant's discovery responses to plaintiff and repeated defendant's request that plaintiff dismiss the matter with prejudice. (*Id.*, 10/27/15 email). Counsel again advised plaintiff that defendant would request attorney fees under § 1692k(a)(3) upon prevailing on the merits. (*Id.*). Plaintiff responded later that day as follows:

> I will review the discovery. As far as dismissing the case, You have not countered my offer to dismiss the case. Your client was negligent and we will

24

> prove it at trial.  Notwithstanding, [y]ou should be representing the best interest of your client, looks like you want to represent your best financial interest of billable hours for enrichment of your wallet; rather than settle it for fraction of the cost with me.  That violates canons of ethics for attorneys in Ohio when attorneys (like you) willfully position themselves to hurt the best interest of the clients they are representing.

(*Id.*).  After counsel advised plaintiff that defendant was not interested in making a settlement offer because it had "done nothing wrong" and instead it intended to recover all of its costs from plaintiff once it prevailed, plaintiff responded, "Sure, keep dreaming." (*Id.*).  Plaintiff's flippant responses to counsel's correspondence and his apparent failure to consider the merits of his claims in light of the authorities provided by defendant is evidence that plaintiff brought and pursued this case in bad faith and with the purpose to harass defendant.

Plaintiff's failure to diligently prosecute this lawsuit and to cooperate with opposing counsel during discovery is further evidence of plaintiff's bad faith and intention to harass defendant by proceeding with the litigation.  Plaintiff did not respond to defendant's motion for judgment on the pleadings filed in November 2015. (Doc. 15).  Moreover, plaintiff did not provide requested discovery in a timely manner.  Plaintiff does not dispute that he failed to make his initial Rule 26 disclosures by the November 4, 2015 deadline. (Doc. 17 at 2).  Further, plaintiff did not respond to defendant's discovery requests served on October 6, 2015, until February 15, 2016, which was after the discovery deadline of January 15, 2016 established by the Court. (Doc. 26 at 1; *See* Doc. 12).  When plaintiff did respond, his response was incomplete. (Doc. 26 at 1).  Further, plaintiff did not file a response to defendant's motion to compel. (Doc. 17).  Plaintiff's delay in responding to defendant's discovery requests necessitated defendant's filing of a supplemental memorandum in support of its motion for summary judgment to address conflicting representations plaintiff had made and proof he had

offered regarding who owned the account in question. (Doc. 26). Plaintiff's continued pursuit of claims that he knew or should have known lacked legal support, coupled with the provision of contradictory allegations to support those claims, is evidence of bad faith and intent to harass. *See Adams*, 2011 WL 3204759, at *2 (defendant established bad faith and intent to harass where plaintiff's claims lacked evidentiary and legal support and plaintiff provided contradictory allegations and affidavit statements). Moreover, plaintiff further unnecessarily prolonged the proceedings by ignoring the substantive issue defendant had raised in its supplemental filing and by instead presenting an unsupported claim that defendant's counsel had perpetrated a fraud on the Court by willfully introducing a false affidavit into the record.[9] (Doc. 27).

Despite plaintiff's failure to diligently prosecute this case and cooperate with discovery, plaintiff seeks to shift the focus from his role in instituting and continuing this meritless lawsuit by questioning defendant's decisions as to how to defend against plaintiff's claims. Plaintiff alleges that defendant engaged in excessive motion practice to obtain fees from him. (Doc. 34 at 1-2). The record refutes plaintiff's contention that defendant filed an excessive number of motions. Defendant filed two dispositive motions (Docs. 15, 18), one of which it moved to supplement for reasons the Court found to be justified. (Doc. 26). Defendant also filed a motion to compel (Doc. 17), to which plaintiff did not respond. There is no evidence that defendant filed these motions in an effort to obtain an award of attorney fees from plaintiff. To the contrary, the record demonstrates that defendant gave plaintiff ample opportunity to dismiss the case and avoid the risk of incurring substantial fees and costs. Early in the litigation, defendant requested that plaintiff dismiss the case on his own so as to avoid the imposition of attorney fees

---

[9] Plaintiff also argued that his response to the motion for summary judgment was timely filed. As noted earlier, defendant did not move for any relief on the ground the response was not timely filed.

26

and costs.  It was only after plaintiff declined defendant's initial requests that defendant filed dispositive motions on each of plaintiff's claims.  Plaintiff prolonged this lawsuit without justification despite being placed on notice by defendant that his claims lacked merit and that defendant would seek to recover its fees if forced to defend plaintiff's baseless claims. Plaintiff's persistence in the face of repeated notice by defendant of the futility of his lawsuit is evidence of bad faith and harassment.

Plaintiff further alleges that defendant delayed resolution of the lawsuit without justification by refusing to agree to plaintiff's offer to stipulate to a dismissal without prejudice. Plaintiff alleges in his reply in support of the motion to dismiss without prejudice that:

> Defendant . . . has refused stipulation to dismiss even with prejudice, after Plaintiff repeatedly offered its willingness to seek stipulation to dismiss with prejudice and even offered to cover the defendant's portion of Court Cost.

> Defendant have engaged in motion practice with a feverish pitch, with an ultimate game plan to seek the help of this court to make a determination of bad faith and harassment where none exists, to harvest attorney fees from the plaintiff. . . .

> Defendant's position not to cooperate in joint stipulation for dismissal with prejudice with the plaintiff, must be recognized as an its ulterior motive to extort attorney fees under 15 U.S.C[.] 1692k(a)(3) is simply outlandish insult to the good faith attempts made by the Plaintiff to exert its legal right to seek corrections to the violations perpetuated against the Plaintiff.

(Doc. 34 at 1-2).  Plaintiff submitted a declaration with his reply in support of the motion to dismiss stating that he placed four telephone calls to defendant's counsel expressing his willingness to stipulate to a joint dismissal with prejudice and offering to pay defendant's court costs.  (Doc. 34, Exh. 1, ¶ 17; *Id.*, Exh. 1, Exh. A).  However, plaintiff does not allege when he made these phone calls, and the supporting documentation he has submitted does not show the dates of the phone calls.  Plaintiff has attached only the email response of defendant's counsel

27

stating that defendant would stipulate to a dismissal with prejudice only if plaintiff paid the attorney fees and costs incurred in the defense of the matter and reminding plaintiff that counsel had repeatedly advised him since the inception of the litigation that defendant would seek to recover the fees and costs incurred in defending the lawsuit. (*Id.*, Exh. A).  The email is dated April 5, 2016, which postdates plaintiff's motion to dismiss the lawsuit without prejudice and defendant's opposing memorandum by more than a week.  At that point, defendant had expended a considerable amount of time and effort defending this lawsuit involving a $229.00 debt that plaintiff insisted on pursuing despite repeated notifications from defendant that plaintiff's case lacked merit and defendant would seek attorney fees if plaintiff continued to pursue his claims.  Plaintiff's belated offer to dismiss the case with prejudice is neither evidence that plaintiff proceeded in good faith nor evidence that defendant prolonged the litigation for an improper purpose.

Finally, plaintiff contends that defendant unreasonably delayed the litigation by failing to cooperate with plaintiff in scheduling a deposition.  (Doc. 34 at 5-6).  The record does not support plaintiff's allegation.  Plaintiff never requested a conference with the Court or filed a motion to resolve an issue with scheduling a deposition or any other discovery dispute.  Conversely, the record shows that plaintiff did not cooperate during discovery and that defendant was forced to file a motion to compel as a result.  (Doc. 17).

In short, this is not a case where defendant simply disagrees with plaintiff's theory of liability.  *See Campbell v. Credit Bureau Sys., Inc.*, 655 F. Supp.2d 732, 743 (E.D. Ky. 2009) (citing *Deere,* 413 F. Supp.2d at 889) ("Just because a defendant 'disagrees with Plaintiff's theory of FDCPA liability' in a case is no basis for a court to conclude that the plaintiff acted in

28

bad faith or with a 'nefarious motive.'")).  Plaintiff should have known either before filing this action or very early on that he could not prevail on the merits; yet, he continued to pursue this litigation.  *Cf. Brown v. Van Ru Credit Corp.*, No. 14-12136, 2015 WL 225727, at *5 (E.D. Mich. Jan. 16, 2015), *aff'd,* 804 F.3d 740 (6th Cir. 2015) (declining to award attorney fees on the ground the FDCPA claims were "minimally colorable under the least sophisticated debtor standard" and there were no other facts or authority to show the lawsuit was brought in bad faith or for the purpose of harassment).[10]  Plaintiff instituted and continued to pursue this lawsuit well after obtaining the relief he purportedly sought; he failed to consider the merits of his case in light of the authorities defendant brought to his attention and he provided flippant responses to defendant's well-considered communications; he failed to respond to motions and to cooperate in discovery; and he made inconsistent representations as to the account owner and the primary purpose of the account.[11]  Defendant has therefore carried its burden to show an award of fees is warranted.

## B. Reasonableness of the request

Defendant requests attorney fees and costs in the amount of $13,181.50 pursuant to 15 U.S.C. § 1692k(a)(3), which authorizes the Court to award an attorney fee that is "reasonable in relation to the work expended."  15 U.S.C. 1692k(a)(3).  (Doc. 31).  In support of the fee request,

---

[10] FDCPA claims are analyzed under a "least sophisticated consumer" standard.  *Saltzman v. I.C. Sys., Inc.*, No. 09-10096, 2009 WL 3190359, at *3 (E.D. Mich. Sept. 30, 2009) (citing *Smith,* 953 F.2d at 1028).

[11] As discussed in connection with the merits of plaintiff's FDCPA claim, plaintiff originally alleged and introduced evidence to show that the account holder was the campaign committee "Friends of Dr. Paul Sohi" but had erroneously been put in his name individually.  Plaintiff changed his position in his reply in support of the motion to dismiss without prejudice and alleged for the first time that the account was an individual account that was used by "committees" as well as plaintiff's family and friends.  (Doc. 34 at 2).

defendant has submitted the affidavit of its counsel, John P. Langenderfer. (Doc. 31-1). Counsel states in his affidavit that Diversified incurred fees and costs in the amount of $13,181.50 in the defense of this matter. (*Id.*, ¶ 3). Counsel has attached billing records to his affidavit which document that Diversified incurred attorney fees in the amount of $12,781.50 and costs in the amount of $400.00. (Doc. 31-1, Exh. 1).

The billing records indicate that three attorneys billed for work performed in this case. Those attorneys are designated only by their initials: "JCT" (presumably Jeffrey C. Turner, trial attorney for defendant); "JPL" (presumably John P. Langenderfer); and "LKW." (*Id.*). There is no indication as to who "LKW" may be. Turner billed at an hourly rate of $190 per hour and performed 2 hours of work for a total of $390.00; Langenderfer billed at an hourly rate of $175 and performed 68.80 hours of work for a total of $12,040.00; and "LKW" billed at an hourly rate of $95 per hour and performed 3.7 hours of work for a total of $351.50. (*Id.*).

A reasonable attorney fee is one that is "adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Dowling v. Litton Loan Servicing LP*, 320 F. App'x 442, 447 (6th Cir. 2009) (citing *Geier v. Sundquist,* 372 F.3d 784, 791 (6th Cir. 2004) (quoting *Reed v. Rhodes,* 179 F.3d 453, 471 (6th Cir. 1999) ("The primary concern in an attorney fee case is that the fee awarded be reasonable, that is, one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers.")). The determination of a reasonable fee requires application of the "lodestar" method, which involves calculating the product of "a reasonable hourly rate" and "the number of hours reasonably expended on the litigation." *Dowling*, 320 F. App'x at 446 (analyzing "reasonable attorney's fee" standard applied in awarding a prevailing plaintiff an attorney fee under §

30

1692k(a)(3)) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983)). *See Scroggin v. Credit Bureau of Jonesboro, Inc.,* 973 F. Supp.2d 961, 981-82 (E.D. Ark. 2013), *aff'd,* 576 F. App'x 632 (8th Cir. 2014) (applying lodestar method to calculate fee award to defendant under § 1692k(a)(3)). Under the "lodestar" method, the party seeking fees "bears the burden of proving that the number of hours expended was reasonable." *See also Williamson v. Recovery Ltd. P'ship,* No. 2:06-cv-292, 2013 WL 3222428, at *9 (S.D. Ohio June 25, 2013). The Court has broad discretion to determine what constitutes a reasonable hourly rate. *Dowling,* 320 F. App'x at 446 (citing *Wayne v. Vill. of Sebring,* 36 F.3d 517, 533 (6th Cir. 1994)). In making this determination, the Court may look to the "prevailing market rate[] in the relevant community," *Blum v. Stenson,* 465 U.S. 886, 895 (1984), which is the rate that "lawyers of comparable skill and experience can reasonably expect to command." *Adcock-Ladd v. Sec'y of Treasury,* 227 F.3d 343, 350 (6th Cir. 2000).

There is insufficient information before the Court to permit a determination as to the appropriateness of the amount of defendant's attorney fee request. Defendant has not submitted any documentation to show that the requested hourly rate is reasonable. Defendant has provided no information regarding the skill level and experience of the three attorneys who performed work in this case. In fact, defendant has not identified the third attorney, "LKW," by name. Nor has defendant provided any information to the Court regarding the rate that lawyers of comparable skill and experience can reasonably expect to command in this district. Defendant must provide this information to the Court before a determination can be made as to whether the hourly rates charged by counsel for defendant, as well as the overall fee, are reasonable.

31

## VII. Defendant's motion to compel (Doc. 17)

In light of the recommended disposition of the pending motions, defendant's motion to compel (Doc. 17) is denied is moot.

## IT IS THEREFORE ORDERED THAT:

(1) Plaintiff's motion to strike affidavits submitted by defendant in support of the motion for summary judgment and plaintiff's motion for sanctions (Doc. 22) are **DENIED**.

(2) Plaintiff's motion for leave to file a memorandum in opposition to defendant's motion for summary judgment and supporting affidavit, motion for leave to file a motion to strike affidavits of Doug Alcorn and Peter M. Jirik, and motion for sanctions against defendant's counsel (Doc. 28) are **DENIED** as moot.

(3) Defendant's motion to compel (Doc. 17) is **DENIED** as moot.

(4) Defendant shall have **fourteen (14) days** from the date of this Order to submit documentation in support of its request for attorney fees pursuant to 15 U.S.C. § 1692k(a)(3).

## IT IS THEREFORE RECOMMENDED THAT:

(1) Defendant's motion for partial judgment on the pleadings (Doc. 15) be **GRANTED** and judgment be granted pursuant to Fed. R. Civ. P. 12(c) in defendant's favor on plaintiff's claim under the Fair Credit Reporting Act.

(2) Defendant's motion for summary judgment (Doc. 18) be **GRANTED** and summary judgment be granted pursuant to Fed. R. Civ. P. 56 in defendant's favor on plaintiff's claim under the Fair Debt Collection Practices Act.

(3) Plaintiff's motion to dismiss the complaint without prejudice (Doc. 30) be **DENIED**.

32

(4). Defendant's motion for attorney fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) (Doc. 31) be **GRANTED,** and the amount of the award be determined following defendant's submission of documentation supporting the reasonableness of the amount requested.

Date: 5/10/16

Karen L. Litkovitz
United States Magistrate Judge

33

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

PAUL SOHI,
     Plaintiff,

                                Civil Action No. 1:15-cv-563
                                Beckwith, J.
                                Litkovitz, M.J.

     vs.

DIVERSIFIED ADJUSTMENT
SERVICE, INC.,
     Defendant.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).